IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ABDISALAN MUKARRAM OMAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:07cv1092 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Thomas A. Wiseman, Jr. |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

Plaintiff Abdisalan Mukarram Omar, a permanent resident of the United States who submitted his Application for Naturalization to the United States Citizenship and Immigration Service ("USCIS" or the "Service") in April 2005, filed this action *pro se* seeking judicial review of the USCIS's failure to finalize the processing of his application within a reasonable time. Defendant, the United States of America, has now filed a motion to dismiss for lack of jurisdiction or, alternatively, to remand the matter to the USCIS, without instructions, "so that it may complete its work." (Doc. No. 7, at 1.)

For the reasons set forth below, the Court finds that it has subject-matter jurisdiction of this matter and that remand without instructions would be tantamount to offering no remedy at all. The United States' motion will therefore be denied.

I.      FACTUAL BACKGROUND

The USCIS received Mr. Omar's N-400 Application for Naturalization on April 19, 2005 and issued an I-797C Notice of Action dated April 26, 2005, informing Mr. Omar that he should expect to be notified of the date and place of his personal interview by the local INS office within 365 days of the Notice. (Doc. No. 1, App. 1.) Mr. Omar received his next Notice of Action dated June 30, 2005, indicating he had been scheduled to be fingerprinted by the INS on August 8, 2005 as part of his background check. The Notice indicated that the INS had to take his fingerprints "and have them cleared by the FBI." (Doc. No. 1, App. 2.) Mr. Omar appeared and was fingerprinted in accordance with the Notice on August 8, 2005. On October 24, 2005, the USCIS conducted a Naturalization interview with

Mr. Omar.  The Naturalization Interview Results indicate that Mr. Omar took and passed tests in English,

U.S. History and government on the same date.  The same Notice contains the following language:

> NOTE:  Please be advised that under section 336 of the Immigration and Nationality Act,
> you have the right to request a hearing before an immigration officer if your application is
> denied, or before the U.S. district court if the USCIS had [sic] not made a determination
> on your application within 120 days of the date of your examination.

(Doc. No. 1, App. 3.)

After Mr. Omar participated in the Naturalization Interview on October 24, 2005, the USCIS has

taken no further action on his application for Naturalization.  Pursuant to Mr. Omar's request,

Congressman Jim Cooper's office made several inquiries to the USCIS office in Memphis, Tennessee as

to the status of Mr. Omar's pending Naturalization Application.  The record contains letters to Mr. Omar

from Congressman Cooper's office dated October 23, 2006, April 25, 2007, July 25, 2007 and October

23, 2007, all indicating that the USCIS's responses to that office's inquiries were identical:  The USCIS

was "awaiting FBI background check."  (Doc. No. 1, Apps. 4–7.)

Mr. Omar filed suit on November 6, 2007 asking this court either to naturalize him or to remand

the matter to USCIS with instructions to naturalize him within a specified and limited timeframe.  The

United States filed its motion to dismiss on January 14, 2008.  Along with the motion, the United States

submits the Declaration of Michael A. Cannon attesting to the difficulties encountered by the FBI in

processing the vast number of name check requests it receives every year.  Specifically, Mr. Cannon

states that "the FBI cannot provide a specific or general time frame for completing a . . . name check . . .

due to a number of factors," and that imposition of a court-devised timeframe would be counterproductive

to the process.  (Doc. No. 8-1, at ¶ 39.)  As of the date of the United States' filing, the FBI still had not

completed responding to the name-check request for Mr. Omar.  (*Id.* ¶ 41.)

## II.    STANDARD OF REVIEW

Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a court's "lack of

jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss pursuant to Rule

12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of

jurisdiction.  *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).  When the defendant

challenges subject-matter jurisdiction through a motion to dismiss under Rule 12(b)(1), the plaintiff bears

the burden of establishing that the Court has subject-matter jurisdiction over his claim.  *Hedgepeth v.*

*Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000); *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993). Moreover, because Rule 12 dictates that a court "*must* dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction," Fed. R. Civ. P. 12(h)(3) (emphasis added), trial courts are generally held to have broad discretion regarding what they may consider in deciding whether subject-matter jurisdiction exists in a particular case. *Moir v. Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990) ("[T]he court is empowered to resolve factual disputes when subject matter jurisdiction is challenged. . . ."). In other words, Rule 12(d), which expressly requires the conversion of a motion under 12(b)(6) or 12(c) into a motion for summary judgment under Rule 56 if the court considers any matters outside the pleadings, does not apply to Rule 12(b)(1) motions. The Court may, in its discretion, consider the matters outside the pleadings which have been presented by the United States for purposes of ruling on this motion.

## III. DISCUSSION AND ANALYSIS

### A. Whether the Court Has Subject-Matter Jurisdiction

In his complaint, Mr. Omar asserts that the Court has subject-matter jurisdiction pursuant to 8 C.F.R. § 310.5 ("Judicial review"). In its motion, the United States seeks dismissal on the grounds that that the Court lacks subject-matter jurisdiction. Alternatively, it asks the Court to remand the case to the USCIS so it can complete its investigation and issue a decision on Mr. Omar's application. The United States insists that its position is supported by the relevant statutory provisions, 8 U.S.C. §§ 1446 and 1447.

Section 1446 pertains to "examinations" performed by the USCIS and provides that:

> The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States; and any such court may, in the event of neglect or refusal to respond to a subpena issued by any such employee so designated or refusal to testify before such employee so designated issue an order requiring such person to appear before such employee so designated, produce relevant books, papers, and documents if demanded, and testify; and any failure to obey such order of the court may be punished by the court as a contempt thereof. The record of the examination authorized by this subsection shall be admissible as evidence in any hearing conducted by an immigration officer under section 1447(a) of this title. Any such employee shall, at

the examination, inform the applicant of the remedies available to the applicant under section 1447 of this title.

8 U.S.C. § 1446(b).  Further, section 1447 states:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).  The parallel regulation mirrors that language and indicates what remedies the district court may provide:

> An application for naturalization may seek judicial review of a pending application for naturalization in those instances where the Service fails to make a determination under section 335 of the Act within 120 days after an examination is conducted under part 335 of this chapter.  An applicant shall make a proper application for relief to the United States District Court having jurisdiction over the district in which the applicant resides. The court may either determine the issues brought before it on their merits, or remand the matter to the Service with appropriate instructions.

8 C.F.R. § 310.5(a).

In support of its claim that these provisions, contrary to their apparent meaning, in fact do *not* vest subject-matter jurisdiction in this Court, the United States first argues that the term "examination" as used in the statutory and regulatory provisions encompasses a process that includes not only the INS interview but also the FBI background check, such that the 120-day period does not begin to run until completion of both.  The background check in the case at bar has not been completed; *ergo*, the United States argues, the 120-day period has not yet begun to run, much less expired.

At least one district court has applied that logic.  *See, e.g.*, *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 444 (E.D. Va. 2005) (concluding that it lacked subject-matter jurisdiction over the plaintiff's claim on that basis, in a case factually identical to the case at bar).  However, most courts to consider the issue, including other courts within the Eastern District of Virginia[1] as well as various district courts within the Sixth Circuit, have declined to follow *Danilov*'s lead, as was noted in the very recent case of *Alderrah v. Chertoff*, No. 07-10371, 2008 WL 880511, *2 (E.D. Mich. March 31, 2008).  There, the defendants cited

---

[1] *See, e.g.*, *Ahmed v. Gonzales*, 509 F. Supp. 2d 556, 558–59 (E.D. Va. 2007) (disagreeing with *Danilov* and noting that "the majority of district courts around the country that have considered this issue have come to the opposite conclusion"); *Ali v. Chertoff*, No. 1:07cv470 (JCC), 2007 WL 2344987, *2 (E.D. Va. Aug. 14, 2007) (noting split on the issue within the Eastern District of Virginia).

*Danilov v. Aguirre* in support of their "suggest[ion] that the 'case law interpreting the term "examination" in § 1447(b) has been mixed, but most recently appears to weigh against construing a naturalization interview as an applicant's full examination.' " To the contrary, the *Alderrah* court observed that "the *Danilov* decision has been criticized by approximately sixty-nine courts and followed by only fourteen," and that a majority of courts to consider the issue "have concluded that the term 'examination' in Section 1447(b) refers to the agency's initial interview of the applicant." *Id.* (quoting *Dukhow v. USCIS*, No. 07-14549, 2008 WL 474138 (E.D. Mich. Feb. 15, 2008)). In another recent case from the Eastern District of Michigan, the court roundly rejected the United States' proposed interpretation of the term "examination" in § 1447(b) as follows:

> First, Section 1447(b) confers jurisdiction on the district court if the agency fails to make a determination "before the end of the 120-day period after the date on which the examination is conducted." 8 U.S.C. § 1447(b). This language implies 'that the examination occurs on a particular, identifiable, date." *El-Daour v. Chertoff*, 417 F. Supp. 2d 679, 681 [(W.D. Pa. 2005)]. Therefore, the "examination" referred to in the statute is not a "process," as [the USCIS] argues, because a " 'process' does not occur on one particular identifiable date." *Id.* Second, the preceding section of the INA, 8 U.S.C. § 1446, indicates that the investigative process is separate from the examination. *Daami v. Gonzales*, No. 05-3667, 2006 U.S. Dist. LEXIS 37539, 2006 WL 1457862, at *5 (D.N.J. May 22, 2006) (unpublished opinion). Third, [the USCIS'] regulations contemplate a distinction between the examination and the investigation and reflect the agency's interpretation that the 120-day period in Section 1447(b) begins to run from the date of the initial examination. *Khelifa v. Chertoff*, 433 F. Supp. 2d 836, 841 ([E.]D. Mich. 2006). For example, 8 C.F.R. § 335.3(a) states in part: "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." And, contrary to the *Danilov* court's reading, 8 C.F.R. § 335.2(b) requires [the USCIS] to conduct the initial examination only after the FBI completes its criminal background check of the applicant. "By referring separately to the FBI background check and the 'initial examination,' and mandating that the former must be completed before the latter will be conducted, this provision plainly contemplates that the background check is independent from, as [opposed] to a part of, the 'examination' . . . ." *Khelifa*, 433 F. Supp. 2d at 841.

*Alkabi v. USCIS*, No. 07-13540, 2007 WL 4465251, *2 (E.D. Mich. Dec.18, 2007); *see also Walji v. Gonzales*, 500 F.3d 432, 436–38 (5th Cir. 2007) (enumerating basically the same three reasons for rejecting the government's proposed interpretation of "examination," but less succinctly, and compiling an exhaustive list of cases reaching the opposite conclusion of *Danilov*).

This Court is likewise not persuaded by the United States' argument that the term "examination" as used in § 1447(b) is not completed, and the 120-day period not triggered, until the FBI finalizes its background check. For the reasons articulated in *Alkabi, supra*, the Court finds that Mr. Omar's initial interview on October 24, 2005 triggered the start of the 120-day period as identified in § 1447(b) and that

he filed his complaint on November 6, 2007, more than 730 days and obviously well over 120 days after the initial hearing.[2]  Thus, the Court concludes that it does have subject-matter jurisdiction over this case. The United States' motion to dismiss for lack of subject-matter jurisdiction must therefore be denied.

### B.    The Appropriate Remedy under the Circumstances

Defendant argues in the alternative that this Court should remand the case to USCIS for adjudication, but without instructions.  Mr. Omar argues that he has taken all the steps asked of him by the USCIS and that this court should either approve his application for naturalization or remand the case to the USCIS with instructions to expedite the process.  If this Court were to remand without giving the USCIS instructions to expedite the process, Mr. Omar would be in no better position than when he first initiated this action.  On the other hand, as other district courts have noted in a case factually similar to this one:

> [T]he executive branch is generally given great deference in immigration matters.  More specifically, a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations.  A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security.

*Shalabi v. Gonzales*, No. 06-866, 2006 WL 3032413, *4 (E.D. Mo. Oct. 23, 2006) (internal citations omitted) (quoted in *Alderrah*, 2008 WL 880511, at *4; *Volovnikov v. Dep't of Homeland Sec.*, No. C-07-03607 EDL, 2008 WL 666023, *3 (N.D. Cal. March 6, 2008); *Dukhow v. USCIS*, --- F. Supp. 2d ----, 2008 WL 474138, *3 (E.D. Mich. 2008), among others).[3]

In other words, neither remanding without instructions nor ordering that Mr. Omar be promptly naturalized would be appropriate.  However, given that Mr. Omar's initial examination for naturalization

---

[2] The United States also contends that the USCIS's own interpretation of the term "examination" is subject to a high degree of deference pursuant to *Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which requires courts to "defer to an agency's reasonable interpretation of a statute it administers unless 'the intent of Congress is clear.' "  *Hamama v. INS*, 78 F.3d 233, 239 (6th Cir. 1996) (quoting *Chevron*, 467 U.S. at 842).  Because this Court finds that the term "examination" as used in § 1447(b) clearly refers to an applicant interview by the agency, the USCIS's proposed interpretation is not justified and is not entitled to *Chevron* deference.  *Cf. Alkabi*, 2007 WL 4465251, at *2 n.2 (rejecting the same argument); *Al-Mohammed v. USCIS*, 07-10732, 2007 WL 2004866, *2 n.2 (E.D. Mich. July 9, 2007) (same).

[3] Most of these cases except for *Dukhow* purport, incorrectly, to quote *El-Daour v. Chertoff*,  417 F. Supp. 2d 679, 684 (W.D. Pa. 2005).  The actual quotation appears to come from *Shalabi*, which correctly cited *El-Daour* in support of the principle that a district court is "not equipped to conduct an investigation to determine if an applicant presents any risk to national security."  *Shalabi*, 2006 WL 3032413, at *4; *cf. El-Daour*, 417 F. Supp. 2d at 684 ("A court is not equipped to conduct such an investigation.").

occurred over three years ago, and taking into consideration both the United States' interest in public safety and national security and Mr. Omar's individual interest in having his naturalization application adjudicated, the Court will hold this case in abeyance for sixty (60) days to give the United States time to complete the FBI name check. The USCIS is instructed to use every available means to expedite this process during that time frame. The parties will be instructed to file a joint status report with the Court within sixty (60) days of the date of the Order that will enter. If the FBI has completed its name check, the Court will remand with instructions immediately to make a decision on Mr. Omar's naturalization application. If the FBI still has not completed the name check within sixty days, the United States will be required to appear to show cause why Mr. Omar should not be immediately naturalized.

IV.     **CONCLUSION**

        For the reasons set forth above, the United States' motion to dismiss and alternative motion to remand without instructions will be denied. The matter will be held in abeyance as set forth above. An appropriate Order will enter.


Thomas A. Wiseman, Jr.
Senior U.S. District Judge